IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:19-cr-251 |
| | : | |
| **v.** | : | |
| | : | |
| **ADAM SANTANA** | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is Defendant's Corrected Motion to Suppress the Evidence Obtained Pursuant to the Contingency Warrant (Doc. 22), filed by Defendant Adam Santana ("Santana" or "Defendant"). For the reasons outlined below, the court shall deny the motion.

### **I. BACKGROUND[1]**

On February 22, 2019, a United States Postal Inspector examined a package addressed to a "Carmen Diaz"[2] at 35 Redwood Street, Chambersburg, PA 17201. It had a sender name of "Juan Rivera" and a return address of PO Box 2819, Juncos, PR 00777. During his investigation, the inspector discovered that no person named

---

[1] The court relies upon a letter sent to United States Attorney Daryl Bloom from a United States Postal Inspector. The court is skeptical as to whether the letter alone—which is hearsay, contains information that does not appear to be in the personal knowledge of the signer, and which has not been filed with an affidavit or declaration authenticating it—is properly before the court. *See* FED. R. EV. 602, 802, 901. Defendant's failure to raise any evidentiary objections, however, render them waived. *See, e.g., Finjan, Inc. v. Symantec Corp.*, No. 10-cv-593, 2013 WL 5302560, at *6 (D. Del. Sept. 19, 2013) ("Finjan waived this argument because it did not object to DX-4348 on hearsay or authentication grounds.").

[2] The parties dispute whether the package was addressed to a "Carmen" or "Carman."

1

"Juan Rivera" was associated with the PO Box and that no one named "Carmen Diaz" was associated with the Redwood address. He thus had a drug dog sniff the package. The dog's reaction signified that the package contained illicit drugs. After obtaining a warrant to open the package, it was revealed the package contained approximately two kilograms of cocaine hydrochloride.

Based on this finding, Pennsylvania State Police Trooper Steven Nesbit applied for a warrant authorizing the police to, *inter alia*: (a) remove the cocaine and replace it with fake drugs; (b) deliver the package to Defendant's residence; and (c) search the residence for a host of items. The search, however, was only authorized:

> upon the delivery and acceptance of the aforementioned parcel and the parcel being taken inside of the residence listed as 35 Redwood St. Chambersburg, PA. In the event the delivery and acceptance of the aforementioned parcel does not occur, then and in that event, this search warrant will become null and void, will not be executed and will be returned to the issuing authority unserved. In the event the parcel is accepted by an individual and taken inside 35 Redwood ST., this search warrant will be executed.

On February 25, 2019, the police delivered the box full of fake cocaine—having placed a GPS locator and light detection device within it, to assess when the box is moved and opened—to the Redwood address.[3] Before Santana arrived home,

---

[3] The court notes that the warrant does not authorize the placing of a GPS locator in the package. It is not clear whether there was an earlier "tracking warrant" issued by a magistrate authorizing the installment of a locator. *See United States v. Golson*, 743 F.3d 44, 48 & n.2 (3d Cir. 2014). Nonetheless, because Defendant does not raise an issue with the GPS tracker, the court will not address whether it was permissibly inserted into the package.

a maintenance man unlocked the front door of the Redwood address, picked up the package, and brought it inside. Upon exiting the apartment, the police apprehended and questioned the maintenance man. He explained that he regularly picks up residents' packages and brings them in. While the police were questioning the maintenance man, Santana and his daughter arrived by car, parked, and walked inside the apartment.[4]

Shortly after entering his apartment, the GPS tracker detected movement of the box, suggesting someone picked up the package and moved it to a different area in the home. Shortly thereafter, the light detector was activated, signifying someone had opened the box.[5] These occurrences led the police to believe that the triggering events within the warrant had occurred and that they were free to enter and search the residence. Upon doing so, the police discovered and seized: (1) a pistol and ammunition; (2) a digital scale; (3) the parcel containing the sham cocaine (which had been cut and opened); (4) five multi-colored bags;[6] (5) a black iPhone; and (6) Polyethylene Glycol (a laxative that the police claim is frequently used as a cocaine cutter).

---

[4] The police did not retrieve the package to place it back outside or directly deliver it to Santana.

[5] Importantly, someone moving and opening the package—despite it being addressed to a person who did not live within the apartment—added reasonable apprehension to the officers' assessment of the situation.

[6] The multicolored bags located in Santana's home appeared identical to the multicolored bag the police found the cocaine stored within in the package.

3

On October 15, 2019, Defendant filed a motion to suppress all evidence obtained during the February 25 search of his house. (Doc. 22.) On November 12, 2019, the United States filed its opposition. (Doc. 27.) On November 26, 2019, Defendant filed his reply brief in support of his motion. (Doc. 30.) This matter is fully briefed and thus ripe for review.

## II. STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution grants individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." As the United States Supreme Court has repeatedly held, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Generally for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *Katz v. United States*, 389 U.S. 347, 356-57 (1967)).

An officer properly acquires a warrant by submitting an affidavit to a magistrate judge providing a sufficient factual basis from which the magistrate judge can reasonably infer that "there is a fair probability that evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause is something less than a prima facie showing, but requires, at least, "a substantial basis for concluding that a search would uncover evidence of

wrongdoing." *Id.* at 235, 237 (internal quotations, ellipses, and brackets omitted). In evaluating the magistrate judge's finding of probable cause, the district court should defer to the magistrate judge's judgment. *Id.* at 236. In addition to traditional warrants, there exist anticipatory or contingent warrants, which contain a "triggering event" that must occur before the warrant authorizes the police to conduct a search or seizure. *See United States v. Grubbs*, 547 U.S. 90, 94-95 (2006).

## III.   DISCUSSION

The gravamen of Defendant's motion is that the phrase "delivery and acceptance of the aforementioned parcel and the parcel being taken inside of the residence" required the police to directly hand the package to him—an event the parties agree did not happen.[7] Neither Defendant nor the government offer the court any authority or dictionary definitions to support their interpretations of the phrase.

---

[7]    Defendant also argues—without citing any authority—that the facts in the affidavit were insufficient to establish probable cause for any search or seizure, specifically arguing, *inter alia*, that the replacement of the cocaine with fake drugs neutralizes the warrant. In response, the government points out that the facts in this case align closely with the facts in *United States v. Golson*, 743 F.3d 44 (3d Cir. 2014). The *Golson* court found the replacement of fake drugs did not neutralize probable cause. *See id.* at 53-55. Defendant does not attempt to distinguish this case in his reply brief. While he is correct that the warrant authorizes a surprisingly broad amount of items to be searched for, the police only took drugs, drug paraphernalia, a gun, and a cell phone from his home—all of which there was probable cause for based on the facts submitted by the police. *See United States v. Yusuf*, 461 F.3d 374, 393 n.19 (3d Cir. 2006) ("[A]n overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probably cause . . . In contrast, the only remedy for a general warrant is to suppress all evidence obtained thereby."). Thus, Defendant has failed to identify any other evidence that need be excluded.

5

Based on its own reading, the court concludes the triggering events did in fact occur here.[8]

Here, the warrant contains three triggering events: (1) delivery of the package at issue; (2) acceptance of the package; and (3) the package being brought inside. The word "delivery" means the "formal act of voluntarily transferring something; esp., the act of bringing goods, letter, etc. to a particular person *or place*." BLACK'S LAW DICTIONARY 541 (11th ed. 2019) (emphasis supplied). The word "acceptance" means "the act of accepting." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (3d ed. 1993). To accept is "to receive with consent []something given or offered," to "assent to the receipt of," or "to take without protest." *Id.* at 10 (quoting three different definitions of "accept"); *accord* THE COMPLETE OXFORD ENGLISH DICTIONARY 70 (2d ed. 1989) (defining acceptance as the "act or fact of accepting, or taking what is offered, whether as a pleasure, a satisfaction of claim, or a duty").

Of note, the sentence containing the triggering events here is written in the passive voice. It thus does not specify who the package must be delivered to, who must accept the package, or who must bring the package inside; it only requires that those events occur. *Contrast United States v. Perkins*, 258 F. Supp. 3d 868, 875

---

[8] The parties have no material, factual dispute regarding how the search occurred or whether the facts the government listed in its affidavit were false. Thus, the dispute here is a purely legal one making no evidentiary hearing necessary. *See United States v. Jackson*, 363 F. App'x 208, 210 (3d Cir. 2010) ("Thus, to warrant an evidentiary hearing, a defendant's motion [to suppress] must contain 'issues of fact material to the resolution of the defendant's constitutional claim.'") (quoting *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1993)).

6

(E.D. Tenn. 2017) (holding a warrant which explicitly stated that the package must be delivered to the defendant was not satisfied by delivery to another person), *with*, *United States v. Grubbs*, 547 U.S. 90, 93-94 (2006) (holding a triggering event which did not state whom the package needed to be received by was satisfied when the package was accepted by the defendant's wife). The warrant also later specified that the package must simply be taken inside "by an individual," further showing that the triggering events did not require any particular person to cause the specified events to unfold.

In *Davidson*, the Middle District of Tennessee held that the defendant's act of "picking up [a] package and taking it inside his shop was enough to constitute accepting delivery" of contraband. *Davidson v. Lindamood*, No. 1:14-cv-161, 2018 WL 1566823, at *17 (M.D. Tenn. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 2192110 (M.D. Tenn. May 14, 2018), *aff'd*, 2018 WL 6431035, at *2 (6th Cir. Dec. 3, 2018) (specifically affirming the district court's discussion of the satisfaction of the anticipatory warrant). The *Davidson* court explained that, when considering anticipatory waivers, "'delivery and acceptance' as a triggering event may be broadly construed." *Id.*[9]

---

[9] *But see Perkins*, 258 F. Supp. 3d at 875 ("The triggering event, however, must be explicit, clear, and narrowly drawn."). The court, however, chooses not to follow the *Perkins* decision because it did not explain how its rule was consistent with the Supreme Court's holding in *Grubbs* that the Fourth Amendment contains no requirement that the triggering events of anticipatory warrants be written with any degree of particularity. *Grubbs*, 547 U.S. at 94.

7

Applying these definitions to the triggering events, reading the paragraph containing them on the whole, and reviewing the facts, the court finds the triggering events here occurred. The package was adequately delivered when it was dropped off at Santana's address, even if it was not directly given to him. The package was brought inside when Santana's maintenance man did so. Finally, by moving the package inside his home and opening it up—despite it being addressed to a different person—Santana consented to receiving the package and its contents, taking it as something offered to him. In other words, he accepted the package.

If the law required a strict construction of these phrases in favor of the accused, the court might construe it differently. But because the Supreme Court has held there is no particularity requirement for triggering events, and another district court has held the triggering event of "delivery and acceptance" can be broadly construed, the court does so here. The triggering events having occurred, the police were authorized to enter Santana's residence and seize the contraband they located.

## IV. CONCLUSION

For the reasons outlined above, the court shall deny Defendant's motion to suppress. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Date: March 5, 2020