IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:19-CR-00251** |
| | : | |
| **v.** | : | |
| | : | |
| **ADAM N. SANTANA** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

Presently before the court is Defendant Adam N. Santana's Motion to Suppress Evidence. (Doc. 46). In his motion, Defendant seeks to suppress all evidence seized from the search of a parcel bearing tracking number 9505511017429051176795 (the "'6795 Parcel"). Having been fully briefed, this matter is now ripe for disposition.

## I. BACKGROUND

On or about February 21, 2019, U.S. Postal inspectors identified and intercepted a suspicious parcel addressed to "Carmen Diaz" at 35 Redwood Street, Chambersburg, PA. (Doc. 49, at 4). This parcel, which had been sent to a mailing address associated with Defendant, weighed approximately 8 pounds 8 ounces and bore the tracking number 9505511017439050164884 (the "'4884 Parcel"). (*Id.*) The return address also indicated that "Juan Rivera" had sent the '4884 Parcel from P.O. Box 2819, Juncos, P.R. 00777. (*Id.*). After a drug detection canine alerted on the parcel, the Government applied for and obtained a search warrant of the '4884 Parcel

(1:19-MC-113) and discovered approximately two kilograms of cocaine therein. (*Id.*)

The next day, on or about February 22, 2019, U.S. Postal inspectors identified a second suspicious parcel (the '6795 Parcel) addressed to "Carmen Diaz" at 35 Redwood Street, Chambersburg, PA. (*Id.* at 9). The '6795 Parcel also identified the same return sender and address as the '4884 Parcel and weighed approximately 8 pounds 11 ounces. (*Id.*) Additionally, like the '4884 Parcel, the same drug detection canine alerted on the '6795 Parcel as containing suspected narcotics. (*Id.*) Based on the alert, Postal Inspector Corricelli ("PI Corricelli") applied for a search warrant of the '6795 Parcel. (*Id.*)

PI Corricelli submitted an application, a supporting affidavit, attachments with images of the '6795 Parcel, and a warrant to the United States Attorney's Office ("USAO") for processing. (*Id.* at 32-42). Each of these required documents contained references to the correct tracking number for the '6795 Parcel. (*Id.*) A United States Magistrate Judge approved the warrant application (1:19-MC-118) on February 25, 2019 (the "Search Warrant"), and PI Corricelli executed the Search Warrant on the same day. (*Id.* at 44-54).

PI Corricelli did not realize, however, that the caption of the Search Warrant listed the '4884 Parcel instead of the '6795 Parcel. (Doc. 47, at 3). The supporting application documents also mistakenly appended an entirely unrelated parcel

description that involved a separate warrant application from the same day (the "'8378 Parcel"). (*Id.*) According to the Government, the documents associated with the Search Warrant of the '6795 Parcel (the intended parcel search), the search warrant of the '4884 Parcel (the original parcel search), and the search warrant of the '8378 Parcel (the unrelated parcel search) were inadvertently confused with the correct application documents that PI Corricelli submitted for processing. (*Id.* at 4). Nonetheless, upon executing the warrant and discovering approximately two bricks of cocaine, PI Corricelli identified the correct tracking number associated with the '6795 Parcel in the return of warrant form that he filed with the clerk's office. (Doc. 59, at 45).

Defendant filed the instant Motion to Suppress Evidence Produced by the Search of the '6795 Parcel on September 14, 2020. (Doc. 46). The Government filed a brief in opposition on September 28, 2020, (Doc. 47), bringing this case to its present procedural posture.

## II. STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution grants individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." As the United States Supreme Court has repeatedly held, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Generally for a

seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *Katz v. United States*, 389 U.S. 347, 356-57 (1967)).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citing *Simmons v. United States*, 390 U.S. 377, 389–390 (1968)). The government, however, "bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). "The applicable burden of proof is by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## III. DISCUSSION

In his motion, Defendant argues that all evidence seized from the '6795 Parcel should be suppressed. In support, Defendant asserts that the Search Warrant fails for lack of particularity and that the good faith exception to the warrant requirement does not apply. The Court will address each argument in turn.

### 1. The Search Warrant is Not Invalid for Lack of Particularity

As mentioned *supra*, the Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. The Warrant Clause of the Fourth Amendment additionally prohibits "the issuance of any warrant

except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Evidence obtained pursuant to a warrant that lacks particularity may be suppressed under the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 906 (1984).

To comport with the Fourth Amendment's particularity requirement, a search warrant's description of the place to be searched must "be such that the officer . . . can with reasonable effort ascertain and identify the place intended." *Garrison*, 480 U.S. at 91 (*quoting Steele v. United States*, 267 U.S. 498, 503 (1925)). The purpose of this requirement is to prevent general and wide-ranging exploratory searches. *Id.* "Ultimately, the particularity requirement intends that 'nothing is left to the discretion of the officer executing the warrant.'" *United States v. Perez*, 712 F. App'x 136, 139 (3d Cir. 2017) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). A warrant need not be technically perfect, however, as "[t]he standard . . . is one of practical accuracy rather than technical nicety." *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975).

Defendant claims that the Search Warrant failed to comport with the particularity requirement, as it listed the '4884 Parcel as the item to be searched instead of the '6795 Parcel. (Doc. 46, at 5-8). Defendant also argues that the supporting Search Warrant documents failed to properly describe the '6795 Parcel, as they only referred to the '4884 Parcel and the '8378 Parcel and did not otherwise

include any identifying information that would have directed an officer to the correct package. (*Id.* at 7). Given the mistakes in the Search Warrant and related documents, Defendant asserts that the Government conducted an unauthorized search of the '6795 Parcel. (*Id.* at 7-8).

The Government responds that the Search Warrant was sufficiently descriptive to guide an executing officer with reasonable probability to the '6795 Parcel. (Doc. 47, at 5). In support of this claim, the Government states that PI Corricelli correctly identified the '6795 Parcel in the required Search Warrant application documents that he submitted to the United States Attorney's Office for processing. (Doc. 47, at 3; Doc. 49, at 32-42). The Government acknowledges, however, that these documents were somehow confused with the search warrant documents for the '4884 Parcel and the '8378 Parcel. (Doc. 47, at 4). As far as the Government can ascertain, "the mix up occurred in forwarding documents from the USAO to the court and then in the photocopying of documents by the court, which occurred at the same time as another warrant application was being filed and processed." (*Id.* at 7).

The Government further emphasizes that, apart from listing the incorrect tracking number and package weight, the affidavit to the Search Warrant contained correct information regarding the '6795 Parcel. (*Id.*) Specifically, both the intended '6795 Parcel and the listed '8664 Parcel: were addressed to the same recipient; had

the same mailing address; listed the same return sender; had the same return address; were identified as suspicious parcels on the same day; and were exposed to the same drug detection dog that alerted the same handler to the presence of illegal narcotics. (*Id.* at 7-8). Accordingly, despite the apparent mix up that occurred while assembling the documents for the Search Warrant, the Government contends that the Search Warrant meets the particularity requirement.

The Government cites to *United States v. Simmons*, 2015 WL 13358206, at *10 (E.D. Pa. Oct. 1, 2015) for the proposition that the inclusion of an erroneous tracking number does not necessarily invalidate a warrant for lack of particularity. (Doc. 47, at 6). *Simmons* involved a U.S. postal inspector who executed a valid parcel warrant, and, upon discovering that the parcel contained cocaine, subsequently obtained a tracker warrant for the package. 2015 WL 13358206, at *5. Unbeknownst to the postal inspector, the tracker warrant and supporting affidavit mistakenly referenced an erroneous tracking number for the parcel. *Id.* The *Simmons* court determined that this oversight did not nullify the tracker warrant, however, as the parcel was correctly identified "by tracking number and delivery address in other portions of the warrant," and the supporting affidavit, when considered in totality, sufficiently demonstrated that the postal inspector sought to insert (and ultimately did insert) the tracking device into the correct parcel. *Id.* at *10.

The Court also finds *United States v. Moss*, 936 F.3d 52 (1st Cir. 2019) to be instructive in this case. In *Moss*, the United States Court of Appeals for the First Circuit considered whether a parcel warrant met the particularity requirement when it contained two conflicting descriptions of an intended package; specifically, the caption of the search warrant correctly identified the tracking number for the parcel, whereas Attachment A, which the search warrant incorporated by reference, mistakenly described an entirely different parcel. 936 F.3d at 58. The *Moss* court reasoned that, although the affidavit lacked the detailed description that the executing officers had intended to include, the tracking number listed in the caption of the search warrant still provided it with "a high degree of particularity." *Id.* at 60. Upon considering the circumstances surrounding the issuance and execution of the search warrant, the *Moss* court further determined that "there was no reasonable probability of [the executing officer] searching another package." *Id.* at 61. The *Moss* court therefore concluded that the search warrant suffered from a mere technical error and did not invalidate it on particularity grounds. *Id.* at 60-61.

Here, like the tracker warrant in *Simmons* and the parcel warrant in *Moss*, the issued Search Warrant documents inadvertently referenced the '4884 Parcel and the '8378 Parcel instead of the '6795 Parcel. (Doc. 49, at 46-54). Although the Search Warrant listed the incorrect tracking number for the '6795 Parcel, its caption and attached application papers otherwise described the correct recipient and mailing

address for the package to be searched. (*Id.* at 46). However, unlike the warrants in *Simmons* and *Moss*, the issued Search Warrant and supporting documents were entirely devoid of any reference to the correct tracking number for the '6795 Parcel. (*Id.* at 46-54). Additionally, the correct identifying information in the Search Warrant equally applied to the incorrect '4884 Parcel. (*Id.*)

Nonetheless, without condoning the extent of the document confusion that occurred here, the Court is satisfied that the mistakes in the Search Warrant as issued amounted to "mere technical errors." *See Simmons*, 2015 WL 13358206, at *10; *Moss*, 936 F.3d at 60-61; *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975). Indeed, the Search Warrant contained sufficient information for the executing officer (PI Corricelli) to identify the correct package and, having already executed the search warrant for the '4884 Parcel, there was no reasonable likelihood that the wrong item would be searched. Thus, as the Search Warrant is not invalid for lack of particularity, the Court will deny Defendant's motion.

**2. The Good Faith Exception to the Warrant Requirement Applies**

Even if the Court were to conclude that the Search Warrant failed on particularity grounds, the Court would not be inclined to suppress the evidence obtained from the search of the '6795 Parcel based on the application of the good faith exception to the warrant requirement. Under the good faith exception, first established in *United States v. Leon*, 468 U.S. 987 (1984), a court should not

suppress evidence obtained through an improper warrant where "police acted in objectively reasonable reliance on the subsequently invalidated search warrant." *Virgin Islands v. John*, 654 F.3d 412, 417-18 (3d Cir. 2011) (internal quotations omitted). In evaluating an officer's reliance on a warrant, a court must determine "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999) (citations omitted). The Third Circuit has further explained that the good faith exception applies unless: (1) the affidavit supporting the warrant was deliberately or recklessly false; (2) the magistrate did not act in a neutral or detached fashion; (3) the affidavit supporting the warrant was also lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was facially deficient and did not particularize the place to be searched or the thing to be seized. *United States v. Zimmerman*, 277 F.3d 426, 436-37 (3d Cir. 2002).

The Third Circuit has also recognized that "[w]hen law enforcement 'exhibits "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.'" *United States v. Franz*, 772 F.3d 134, 144 (3d Cir. 2014) (quoting *Davis v. United States*, 564 U.S. 229, 258 (2011)) (internal brackets omitted). However, "when the police act with an objectively reasonable good-faith belief that their

conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way.'" *Id.* (quoting *Davis*, 564 U.S. at 238). The court must thus apply the exclusionary rule when doing so is "calculated to prevent" future constitutionally-invalid searches, "not to repair" the harm inflicted by one. *United States v. Wright*, 493 F. App'x 265, 271 (3d Cir. 2012) (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)).

The Defendant argues that the good faith exception to the warrant requirement does not apply in this case, as the Search Warrant, Application for the Search Warrant, and the Affidavit in support of the Search Warrant each described an item other than the '6795 Parcel. (Doc. 46, at 8). The Government responds that, even if the Search Warrant failed on particularity grounds, PI Corricelli reasonably relied on the warrant upon executing it. (Doc. 47, at 10-12). In support of this contention, the Government points to the fact that PI Corricelli properly assembled the requisite Search Warrant forms for processing, reasonably believed that the Search Warrant issued by the magistrate judge (1:19-MC-0118) corresponded with the '6795 Parcel that he sought authorization to search, and recorded the correct parcel number on the return of warrant form. (*Id.*) The Government further contends that PI Corricelli executed the Search Warrant in good faith as "the circumstances of this case indicate nothing more than isolated negligence." (*Id.* at 12).

Assuming *arguendo* that the Search Warrant's erroneous tracking number rendered it facially invalid, the Court finds that the search of the '6795 Parcel was executed in good faith. *See Zimmerman*, 277 F.3d at 436-37. The Court agrees with the Government that PI Corricelli's oversight was not the type of "deliberate," "reckless," or "grossly negligent" conduct that the exclusionary rule aims to deter, but rather akin to an act of "simple, isolated negligence." *See Franz*, 772 F.3d at 144. Therefore, applying the exclusionary rule here would provide little deterrence in curtailing future Fourth Amendment violations. Accordingly, the Court alternatively denies Defendant's motion to suppress based on the application of the good faith exception to the warrant requirement.

## IV. CONCLUSION

For the reasons set forth above, the Court will deny the Defendant's motion to suppress. (Doc. 46). An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: December 14, 2020